RECORD NO. 11-4187

In The
# United States Court of Appeals
### For The Fourth Circuit

**UNITED STATES OF AMERICA,**

*Plaintiff – Appellee,*

v.

**GREGORY ALFRED WHYTE,**

*Defendant – Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
AT BALTIMORE

---

**REPLY BRIEF OF APPELLANT**

---

Erek L. Barron
**BARRON & ASSOCIATES, LLC**
1300 Caraway Court, Suite 200
Largo, Maryland  20774
(301) 364-1607

*Counsel for Appellant*

**THE LEX GROUP** ♦ 1108 East Main Street ♦ Suite 1400 ♦ Richmond, VA  23219
(804) 644-4419 ♦ (800) 856-4419 ♦ Fax: (804) 644-3660 ♦ www.thelexgroup.com

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

I.   The Indictment Was Constructively Amended ................................................1

    a.   Standard of Review ..................................................................................1

    b.   The Government Unfairly Surprised the Defendant with Evidence Introduced at Trial and Violated His Double Jeopardy Rights.........................................................................................................1

II.  Trial Counsel Was Ineffective ..........................................................................4

    a.   The Proffered Testimony of Sean Bundy Was Important to Defendant's Case, That Testimony Never Made the Record, and Trial Counsel Should Not Have Abandoned It .....................................4

    b.   Epps's Testimony Was Important to Defendant's Case, His Assertion of the Fifth Amendment Privilege Was Clearly Wrong, and Trial Counsel Should Have Challenged It ........................5

III. The trial court's hearing on defendant's ineffective assistance of counsel claim was improper and incomplete...................................................8

CONCLUSION ........................................................................................................9

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# **TABLE OF AUTHORITIES**

**Page(s)**

## **CASES**

*Hoffman v. United States*,
    341 U.S. 479 (1951).................................................................................6

*Malloy v. Hogan*,
    378 U.S. 1 (1964).....................................................................................6

*Murphy v. Waterfront Com'n of New York Harbor*,
    378 U.S. 52 (1964)...................................................................................6

*Rogers v. United States*,
    340 U.S. 367 (1951).................................................................................6

*Stirone v. United States*,
    361 U.S. 212 (1960).................................................................................3

*Strickland v. Washington*,
    466 U.S. 668 (1984)..............................................................................4, 7

*United States v. Floresca*,
    38 F.3d 706 (1994) ..................................................................................1

*United States v. Foster*,
    507 F.3d 233 (4th Cir. 2007) ...................................................................1

*United States v. Gibbs*,
    182 F.3d 408 (6th Cir. 1999) ...................................................................7

*United States v. Highgate*,
    521 F.3d 590 (6th Cir. 2008) ...................................................................6

*United States v. Malloy*,
    568 F.3d 166 (4th Cir. 2009) ...................................................................1

*United States v. Morales*,
    113 F.3d 116 (8th Cir. 1997) ...................................................................4

*United States v. Mubayyid*,
    --- F.3d ---, 2011 WL 3849749 C.A.1 (Mass.) .................................................4

*United States v. Reese*,
    561 F.2d 894 (D.C. Cir. 1977) ......................................................................7

*United States v. Vavages*,
    151 F.3d 1185 (9th Cir. 1998) ......................................................................7

## **CONSTITUTIONAL PROVISION**

U.S. CONST. amend V ..........................................................................................5, 6

## I. The Indictment Was Constructively Amended

### a. Standard of Review

Contrary to the government's assertion, this court's review of a constructive amendment does not change depending on preservation of the issue by an objection at the trial level. *Floresca*. In *Floresca*, this court stated that it is an "open question as to whether the absence of an objection [to a constructive amendment] requires further analysis." *Cite*. Nevertheless, the court, for the sake of thoroughness, applied plain error stating, "it is by no means clear that we should." Later, in *United States v. Malloy*, 568 F.3d 166 (4th Cir. 2009), the court affirmed that this circuit reviews claims of constructive amendment *de novo*.

"Constructive amendments are error *per se* and, given the Fifth Amendment right to be indicted by a grand jury, 'must be corrected on appeal even when not preserved by objection.'" *United States v. Foster*, 507 F.3d 233 (4th Cir. 2007) (quoting *Floresca*, 38 F.3d at 714).

### b. The Government Unfairly Surprised the Defendant with Evidence Introduced at Trial and Violated His Double Jeopardy Rights

The government first argues that it did "not present evidence of 'the events of Count Two'" and that "[i]n fact, no evidence of the March 2008 seizure was presented, directly or indirectly, by Moultrie or by any other witness." Gov. Brf. 37. Therefore, the government argues, there was no constructive amendment. However, the government does not address the fact that Moultrie, in all respects

1

prior to trial, was a witness for the events of Count Two and relevant to no other charge. It is disingenuous for the government to make the argument that a witness from Count Two, who is never mentioned in discovery or during pretrial as a witness for anything other than Count Two and testifies directly contrary to anything proffered by the government,[1] does not constitute surprise because her testimony is not evidence "presented in the context of the events of March 18, 2008." Gov. Brf. 38. The prohibition against constructive amendments operates to prevent even this type of end-run around proper notice.

The use of Moultrie is not the only instance of the government selecting evidence from Count Two and the other alleged conspiracy. On the very first day of trial the government elicited testimony from Sargent Andy Johnson that he sought Motor Vehicle Administration records on a "Tony Smith," evidence that was previously only relevant to Count Two. S.J.A. 468-470, 484. Thus, the appearance of Moultrie was not the only instance of the government's introduction of evidence from the severed Count Two to bolster its case on the remaining counts. Again, this is precisely the type of conduct the prohibition against constructive amendments is meant to stop to protect a defendant's constitutional rights.

---

[1] According to the government, Moultrie knew the defendant as "Tony Smith" and not as "Manny."

2

Next, the government argues that there could not have been surprise because a phone connected to the defendant "had contacts with a telephone subscribed to Deirdre Moultrie" during the Count One conspiracy and therefore the defendant should not have been surprised that Moultrie knew him as Manny. Gov. Brf. 39. However, the government fails to explain how alleged phone contacts demonstrate Moultrie knew the defendant as "Manny" rather than "Tony Smith" or some other name. Absent an explanation, the defendant still had no notice and the indictment was constructively amended. Likewise, regarding Sargent Andy Johnson's testimony on Tony Smith Motor Vehicle Administration records, the government has no argument regarding appropriate notice.

Finally, the government casts the defendant's brief as arguing that the mere severance of Count Two created a variance. This misunderstanding misses the point that by choosing witnesses and evidence to use from a severed Count Two conspiracy to use at trial in the remaining Count One conspiracy, the government either fundamentally changed the character of the conspiracy indicted in Count One or improperly introduced evidence at trial of two distinctly separate conspiracies. Either way, what the prosecuted conspiracy encompasses becomes unclear and this lack of clarity is precisely the lack of notice and double jeopardy ambiguity that the prohibition against constructive amendments is meant to prevent. *See Stirone v. United States*, 361 U.S. 212 (1960) (an indictment is

3

constructively amended where the proof adduced at trial broadens the basis of conviction beyond that charged in the indictment); *United States v. Mubayyid*, --- F.3d ---, 2011 WL 3849749 C.A.1 (Mass.), 2011 ("the government's broadening of an indictment's charges through proof at trial constructively amends an indictment"); *United States v. Morales*, 113 F.3d 116, 119 (8th Cir. 1997) ("A variance results where a single conspiracy is charged but the evidence at trial shows multiple conspiracies").

## II.  **Trial Counsel Was Ineffective**

The errors by defendant's trial counsel were not based on strategic decisions and fell far below any acceptable standard; and, her errors prejudiced the defendant of a significant possibility of a different result in the case. *See Strickland v. Washington*, 466 U.S. 668 (1984).

   a. The Proffered Testimony of Sean Bundy Was Important to Defendant's Case, That Testimony Never Made the Record, and Trial Counsel Should Not Have Abandoned It

The government claims that "the primary object of Bundy's testimony had been accomplished," but does not fully characterize the importance and extent of what Sean Bundy's testimony was going to be. Gov. Brf. at 46. Again, Bundy's proffered testimony was that he knew Hamilton "for over 20 years…Hamilton gave him his connections when he was in jail, secured his drugs from California….[and] Hamilton explained to him that he was making up this story

4

about Mr. Whyte to get a better charge." J.A. 157. The trial court ruled that this testimony was relevant, important, and should be allowed. J.A. 169, 171.

However, this proffered testimony never made the record because trial counsel simply abandoned it. J.A. 199. And, adding insult to injury, trial counsel actually asked that all of Bundy's previous testimony be stricken from the record. J.A. 199. While no testimony was stricken, the court incorrectly believed that the proffered testimony had made the record. J.A. 199-202, 412.

The government offers no argument or strategic reason, real or imagined, why trial counsel should have reasonably abandoned this witness's testimony by requesting he not be transported and requesting his prior testimony be stricken from the record. Gov. Brf. at 45-47. This was an inexcusable error by defendant's counsel regarding a witness pivotal to defendant's case. Her performance was constitutionally deficient.

> b. Epps's Testimony Was Important to Defendant's Case, His Assertion of the Fifth Amendment Privilege Was Clearly Wrong, and Trial Counsel Should Have Challenged It

The government offers no authority for its assertion that it was reasonable for trial counsel to simply accept the representation that Epps would assert his Fifth Amendment privilege. Gov. Brf. 47-50. It is well settled that the privilege against self-incrimination is available whenever the answer to a question would support a conviction of the witness for a past crime or "would furnish a link in the chain of

5

evidence needed to prosecute" the witness for a crime. *Malloy v. Hogan*, 378 U.S. 1, 11-12 (1964). Further, the privilege is available if the answer would help in convicting the witness of either a federal crime or a state crime. *Murphy v. Waterfront Com'n of New York Harbor*, 378 U.S. 52 (1964).

However, the court must determine whether the question presents a reasonable danger of incrimination from the surrounding circumstances. *Rogers v. United States*, 340 U.S. 367, 374 (1951). Because the court has to decide this without knowing what the answer would be the rule is that the court must honor the claim of privilege if it is "evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Hoffman v. United States*, 341 U.S. 479, 486-487 (1951). Nevertheless, the trial judge is required to inquire as to the basis for the privilege claim and not merely accept a blank assertion of the Fifth Amendment. *See United States v. Highgate*, 521 F.3d 590, 594 (6th Cir. 2008) ("When defense counsel questioned [the witness]'s fear of self-incrimination in light of [his] having been sentenced already for his participation, the court conceded that it did not understand [the] fear but said, '[T]hat's the wonderful thing about the Fifth Amendment. They don't have to do anything more than say they're taking it.' Our precedent compels the conclusion that the district court erred by not inquiring into

6

the legitimacy or scope of Jones's claimed privilege."); *United States v. Gibbs*, 182 F.3d 408, 431 (6th Cir. 1999) ("A witness cannot meet the reasonable-fear-of-prosecution prong by simply making a blanket assertion of the privilege against self-incrimination. However, in certain circumstances, when it is clear that the witness intends to invoke the privilege with respect to any question asked, 'a particularized inquiry by the court would [be] futile.'"); *United States v. Vavages*, 151 F.3d 1185, 1192 (9th Cir. 1998) ("The court's duty to scrutinize a witness' invocation of the Fifth Amendment is particularly weighty where, as here, the witness makes a blanket assertion of the privilege."); *United States v. Reese*, 561 F.2d 894, 900 (D.C. Cir. 1977) ("[T]he trial judge must make an appropriate inquiry into the basis of the privilege claimed by the witness, and may not permit the witness to refuse to testify where a narrower privilege will adequately protect him."). Therefore, the defendant's trial attorney should have demanded the court inquire further into Epps's claim of privilege and her failure to do so clearly fell below an objective standard of reasonableness.

Having established that counsel's performance was objectively unreasonable, under *Strickland*, a claim of ineffective assistance of counsel requires a showing of substantial possibility of a different outcome. As outlined in defendant's brief, a successful impeachment of Hamilton would have caused a number of key pieces of the government's case to fall and significantly increase the

7

probability of a different result in this case. By not requesting further inquiry from the court as to Epps's privilege claim and abandoning reasonable efforts to secure his testimony, trial counsel's performance was constitutionally deficient. The abandonment and failure by defendant's counsel to get the testimony of two witnesses available to impeach the government's star witness denied the defendant effective assistance of counsel twice over.

### III. The trial court's hearing on defendant's ineffective assistance of counsel claim was improper and incomplete

The government misconstrues the issue presented regarding the trial court's hearing on the defendant's claim of ineffective assistance of counsel. The issue presented is not simply whether the court properly denied defendant's request for continuance but whether the court conducted a full, fair, and proper hearing such that defendant's rights were not infringed and such that this court had a record upon which it could make a proper judgment. The government even notes the inadequacy of the record. Gov. Brf. 49. Moreover, it is undisputed that the court's decision was based on its own incorrect recollection of the trial record.

Had defendant's trial counsel (King) been present to testify, defendant's post-conviction counsel (Warnken) would have been able to examine her regarding decisions that were clearly unreasonable and not tactical on matters that had a significant possibility of producing a different result at trial. Due process requires that, where a court decides to hold a hearing, particularly one affecting the

8

substantial constitutional rights, that hearing should be conducted in a manner that fairly develops the issues presented. The trial court did not conduct such a hearing in this case, and moreover, based its decision on its own incorrect recollection of the trial testimony. Therefore, even if this court were not to find ineffective assistance of counsel, a remand of the court for an appropriate hearing is necessary.

## **CONCLUSION**

Wherefore, appellant Gregory A. Whyte, respectfully requests that this Court reverse the convictions against him, grant him a new trial on all counts of conviction, or, in the alternative, remand the case for a hearing before another judge in the District Court.

/s/ Erek L. Barron
Erek L. Barron
BARRON & ASSOCIATES, LLC
1300 Caraway Court, Suite 200
Largo, Maryland 20774
(301) 364-1607

*Counsel for Appellant*

## **CERTIFICATE OF COMPLIANCE**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

    [ X ] this brief contains [2,012] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    [   ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

    [   ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].


Dated: September 30, 2011                 /s/ Erek L. Barron
                                          *Counsel for Appellant*

# **CERTIFICATE OF FILING AND SERVICE**

I hereby certify that on this 30th day of September, 2011, I caused this Reply Brief of Appellant to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> John F. Purcell, Jr.
> Sujit Raman
> OFFICE OF THE U.S. ATTORNEY
> 36 South Charles Street, 4th Floor
> Baltimore, Maryland  21201
> (410) 209-4800
>
> *Counsel for Appellee*

I further certify that on this 30th day of September, 2011, I caused the required number of bound copies of the Reply Brief of Appellant to be hand-filed with the Clerk of the Court.

/s/ Erek L. Barron
*Counsel for Appellant*